UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDA HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-1396 (CEJ) |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Defendant. ) | |

## MEMORANDUM

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On August 31, 2000, plaintiff Linda Harris filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (Tr. 41-2). On October 27, 2000, plaintiff's application was approved. (Tr. 100-3).

On November 24, 2003, plaintiff's application was reopened due to evidence that she continued to work after she was awarded disability. (Tr. 136-137). On February 2, 2004, after reviewing evidence regarding plaintiff's employment, the Commissioner determined that the previous disability determination was erroneous and denied plaintiff's claim. At plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing. The ALJ determined that plaintiff had been disabled since March 11, 2003. (Tr. 25-30).[1]

---

[1] At the hearing, plaintiff amended the onset date of her disability to March 11, 2003.

On August 23, 2006, the Social Security Administration (SSA) notified plaintiff of an overpayment of disability insurance benefits. (Tr. 51). On September 15, plaintiff requested a waiver of overpayment recovery or change in repayment rate. (Tr. 58-66). Her request was denied. (Tr. 51-57) On June 7, 2007, a hearing was held before an ALJ. (Tr. 658). On January 22, 2008, the ALJ issued a decision denying plaintiff's request for a waiver of overpayment. (Tr. 10-16). On July 2, 2010, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 4-7). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 § U.S.C. 405(g).

## II.  Evidence Before the ALJ

Plaintiff was the sole witness at the hearing before the ALJ. (Tr. 660). At that time, she lived in a house owned by her parents. (Tr. 672).

Plaintiff testified that she received disability insurance benefits from December 2000 to August 2003. (Tr. 662). Plaintiff stated that she began receiving benefits because she was diagnosed with cardiomyopathy, chronic obstructive pulmonary disease, and congestive heart failure. (Tr. 665). Although plaintiff's doctor told her that she would probably never be able to work again, plaintiff wanted "to try to go back to work." (Tr. 665).

In October 2000, plaintiff called the SSA to report that she was planning to return to work in the second week of October. (Tr. 667). According to plaintiff, a representative from the SSA responded by saying "ok" and that the SSA would keep in contact with her. (Tr. 666). Plaintiff interpreted the representative's statement to mean that the SSA would contact her if it wanted any further information about her work status. (Tr. 679).

Plaintiff worked from October 2000 until January 2001 when she became sick and had to stop. (Tr. 666). Plaintiff testified that from February 2001 until 2003, she only able to work "on and off" due to her health problems (Tr. 666-667). Plaintiff last worked in 2003, but she received benefits under the Family and Medical Leave Act (FMLA) for some period of time after that.

Plaintiff testified that she received disability benefit checks while she was employed, and that she cashed them because she was not working on a full-time basis and because she had to pay medical expenses. (Tr. 667, 669-670). Plaintiff also testified that she did not contact the SSA after her phone call in October 2000. (Tr. 670). Plaintiff assumed the agency knew she was working because she listed her benefits income and her work earnings on her tax return. (Tr. 671). In 2004, the SSA sent plaintiff a letter stating that they were stopping her benefits because it no longer considered her disabled. (Tr. 667).

Plaintiff testified that she pays rent and utilities and she also pays for her groceries and prescriptions. Plaintiff testified that she is unable to do her own laundry or grocery shopping, so she pays someone else to do these tasks for her. (Tr. 672-674). Based on her expenses, plaintiff testified that should would not be able to repay $25,000 to the SSA. (Tr. 677).

### III. Documentary Evidence

On October 27, 2000, the Social Security Administration sent plaintiff a letter stating that she was eligible for monthly disability benefits based on an onset date of June 28, 2000. (Tr. 100). The letter told plaintiff to let the SSA know if her health improved or if she returned to work. (Tr. 100).

On July 15, 2003, the SSA sent letters to plaintiff's employer requesting information regarding the amount of wages plaintiff received from 2000-2003. (Tr. 202). Plaintiff's employer stated that she received $28,513 in 2000, $15,528.07 in 2001, $14,163.76 in 2002, and $4,200 in 2003. (Tr. 202-203).

In a letter dated November 24, 2003, the SSA informed plaintiff that, based on evidence of substantial gainful activity, she did not become eligible for benefits until March 11, 2003, the date she stopped working, and that the SSA would conduct a review of plaintiff's claim to determine whether she was still disabled under its rules. (Tr. 136). The letter also informed plaintiff that she could submit statements or other information for consideration by the SSA in making its determination. (Tr. 136).

Plaintiff was notified that she had received an overpayment of benefits from December 2000 through August 2003 in the amount of $25, 155.60. (Tr. 25). On September 15, 2005, plaintiff requested a waiver of overpayment recovery. (Tr. 59). In the request, plaintiff stated that she believed the SSA was aware of her return to work because she had contacted the agency in October 2000. (Tr. 61). The SSA denied plaintiff's request on August 23, 2006. (Tr. 51). In her request for an administrative hearing, plaintiff stated that she reported her work activity to the SSA. (Tr. 181).

### IV. The ALJ's Decision

The ALJ made the following findings:

1. The claimant was overpaid the benefits paid to her in the amount if $25,155.60 for the months from December 2000 through August 2003.

2. The claimant was not "without fault" in causing or accepting the overpayment because she knew or should have known that she needed to perform diligence in reporting her work activity and that she was receiving payments that she was not eligible to receive 20 CFR § 404.507.

4

3. Recovery of the overpayment would not be against equity and good conscience 20 CFR § 404.509.

4. Recovery of the overpayment is not waived 20 CFR § 404.506.

## V. Discussion

The Court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724. The Court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, when the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, those findings are deemed to be supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

### A. Overpayment

An overpayment occurs when "an individual receives more . . .than the correct payment due under title II of the Act." 20 C.F.R.§ 404.501. The Social Security Act generally requires the Commissioner to recover an overpayment. 42 U.S.C. § 404(a)(1)(A). However, the statute explains that "there shall be no . . .recovery . . . from, any person who is without fault if such . . .recovery would defeat the purpose

5

of this [Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). The overpaid claimant has the burden of proving entitlement to a waiver of overpayment. Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000).  Fault by the SSA does not relieve the overpaid claimant from proving that she is without fault. 20 C.F.R. § 404.507.

To determine whether a claimant is at fault, "the SSA will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. §404.507. The claimant is at fault when:

> (a)  An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b)  Failure to furnish information which he knew or should have known to be material; or
>
> (c)  With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect

Id.

To "[d]efeat the purposes of title II . . . means [to] defeat the purpose of the benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508.2.  An overpaid claimant's ordinary and necessary living expenses include:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII),taxes, installment payments, etc.;
>
> (2) Medical, hospitalization, and other similar expenses;
>
> (3) Expenses for the support of others for whom the individual is legally responsible; and

>   (4) Other miscellaneous expenses which may reasonably be considered
>   as part of the individual's standard of living.

Id.

### B. Plaintiff's Allegations of Error

Plaintiff does not dispute the fact that she received an overpayment of disability insurance benefits. Rather, plaintiff asserts that the ALJ erred in finding that she was not without fault in causing the overpayment. Plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole.

Plaintiff first argues that she is not at fault because she listed her benefit awards and earnings on her annual tax return forms. During the hearing, plaintiff testified that she believed that the SSA knew she was working because she listed her earnings on her tax return forms. The ALJ determined that filing tax return forms did not constitute sufficient notice. (Tr. 15). Rather, plaintiff should have taken further steps to clarify to the agency that she was employed between December 2000 through August 2003. (Tr. 15).

The record supports the ALJ's finding. On October 27, 2000, the SSA sent a letter to plaintiff stating that she should inform the SSA if she returned to work. (Tr. 100). The letter provided a toll-free phone number and address for contacting the SSA. It also included a pamphlet that explained how plaintiff should report a return to work or an improvement of her health to the SSA. (Tr. 101-103). The letter did not suggest that reporting work status to the IRS or filing tax return forms would be sufficient. (Tr. 101-103).

Plaintiff testified that she telephoned the SSA in October 2000 and told a representative that she would be returning to work later that month. Plaintiff asserts

7

that this establishes that she was without fault.  The record does not contain any evidence that contradicts plaintiff's testimony.  Moreover, the ALJ did not discuss this testimony in determining whether plaintiff furnished material information to the SSA. (Tr. 15).  Generally, in a waiver of overpayment-recovery case, "if an ALJ chooses not to believe a claimant, it is necessary that the fact finder articulate any reasons for questioning the claimant's credibility."  Lang v. Astrue, 2009 WL 3711545 (D. Minn. November 3, 2009); see also Coulston v. Apfel, 224 F.3d 897,900 (8th Cir. 2000); Viehman v. Schweiker, 679 F.2d 223, 228 (11th Cir. 1982).  Here, the ALJ had the opportunity to address and discredit plaintiff's testimony, but did not do so.  The Court, therefore, is unable to determine whether the ALJ based his findings on the scope of plaintiff's evidence or chose to disbelieve the plaintiff.   Because the ALJ did not address or discredit plaintiff's testimony, his determination that plaintiff is not without fault is not supported by substantial evidence.

## VI. Conclusion

Because the ALJ failed to consider plaintiff's testimony that she reported her return to work in October 2000, his conclusion that plaintiff is not without fault in accepting the overpayment is not supported by substantial evidence.  Therefore, the Commissioner's decision will be reversed and remanded under sentence 4 of 42 U.S.C. § 405(g).   Upon remand, the Commissioner should consider plaintiff's testimony and evaluate whether plaintiff is at fault under 42 U.S.C. § 404(b).

An order remanding this case will accompany this Memorandum.

*[signature]*
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2011.